Good morning. Richard Rome, appearing for the appellant. Mr. Rome. So in this case, it's a criminal case where the defendant was convicted of possessing 15 or more unauthorized access devices, which were credit cards. The first issue I would like to raise relates to whether he should have been appointed a new attorney when there was a hearing on this on November 19th. This was the third round of new attorneys, was it not? Yes, it was the third hearing, a separate hearing. There was one, two earlier in that same year. And why isn't this just a matter of difference in strategy rather than an absolute inability to communicate? Well, I think when you look at the reasons that were given by defense counsel here, it was so egregious, the accusations, that I think it almost mandated some kind of relief. He was being threatened. He was being mistreated. He was being lied to. He was being mentally tortured. This was what defense counsel said. He was being insulted, threatened, threatened with bar action, that he wasn't being productive, and this went on and on. And he characterized it as a complete breakdown of the relationship. So with that, I mean I think that that is enough. Otherwise, you've got a situation here where you have a total collapse of the relationship. The defendant also made a slew of allegations that he wasn't being listened to, that he wasn't being provided information, that they were having angry arguments. So with respect to that, I think that there was no reason just because there were two prior hearings shouldn't dictate whether there would be a third. We're just going to deny this third hearing because he had two prior lawyer changes. But I think what's most important there is really what the lawyer said there, and he wanted out. He made it pretty clear, and I think the judge did make a comment that he thought it was very unusual for a CJA attorney to be pretty much begging to be bailed out of the file. So I think in that regard, I think that the court erred on that ruling. I'll move on to this next issue, which related to a statement whether under Rule 804B3 there was going to be a statement made by an unavailable party who was unavailable to testify at the trial and who made an admission on, I believe, the AUSA's voicemail. Or her answering phone machine or whatnot. But counsel, was there ever any identification of the caller other than your client's statement that the person was who he purported it to be? Well, I think the party who called identified himself. Well, he identified himself as Abu, which is the same name that your client used. Well, that's true. Well, they did have some of this. They apparently used the same name at some point. Well, he didn't give a last name. Do we have a last name for him? I don't think he gave a last name on that. I know he didn't give a last name. Did your client provide them with a last name? At that hearing? I don't know if he provided it to them. I don't know that it was Tesla. Nobody's ever even told us what this cousin's name is. Well, no. He said my name is Abu. Right. But Abu what? Well, I think it was Abu Arbogato. I believe that they both used the same last name somewhere. I don't know that it came up during that hearing, but somewhere in the record. And if he had said this is Abu Arbogato, how far would you think that would have gotten with the district court? Well, it didn't get far, so it probably wouldn't have gotten. It probably wouldn't have gotten. And if he had given a last name, it would have gotten even less far than he got. But it doesn't mean that it wasn't up to the jury to make that determination. Now, but counsel, you have to prove that at least there was a cousin. You haven't given us a last name. He didn't give us a last name. He didn't tell us anything about him. Nobody was ever able to verify that there actually existed such a person and that Mr. Arbogato hadn't made the call himself. He's in here for fraud. He's imitating people all the time. Well, I believe that he testified that his cousin was not available, so I don't believe that. Well, his cousin may not have been available because he didn't exist. That would be a true statement. But that's up. I think that that's more a jury call than to exclude the evidence. Let it come in. Let the jury weigh in. Well, the district court has discretion to determine whether or not evidence even warrants getting to the jury. I mean, the district court is sitting there for a reason. I know. I totally understand that, and the district court definitely has discretion. I think just in this instance that it erred in not allowing it in. It would have been. Well, it's not erred. It's abuse of discretion. Well, yeah. It was abuse of discretion in not allowing it in. And I think in the end that would have corroborated the defendant's alibi, basically, that he didn't do this. That it wasn't him that perpetrated these crimes. He testified at the trial that it was. The other problem with it is this call was traced to a pay phone. I believe that's correct. Or somebody made that representation. That's correct. Well, pay phones are – there's nothing wrong with pay phones. Well, it's a little easier to hide your identity when you call from a pay phone than when you call from a phone that's connected to an individual. That may be true. And so all of the district court could consider all of those in determining whether or not the evidence was of sufficient credibility to let the jury hear it, or whether or not it would just inject confusion into the jury proceedings. Right. I think also that the – right. There was also apparently some corroborating evidence to the extent that there were some other phone messages that were left similar with the defense lawyer, and he brought that to the – that was brought to the court's attention. So the only thing I can say is that let it come in. Let the jury decide if it's a total fraud or a total hoax and the arguments could be made. Then let the chips fall where they may, but there's sure no reason to keep it out. Well, even if we agree with you that perhaps this evidence should have come in, how much benefit would it have been in view of all of the other incriminating evidence that was admitted and that the jury heard? Well, I think any corroborating evidence that the defendant didn't do something and this would have corroborated that, I think that's very beneficial. Otherwise, he's standing alone saying I didn't do it. Well, the issue becomes whether or not the evidence is of sufficient magnitude that it calls into question the jury verdict. Well, absolutely. And I think if you're having somebody else say I did it, he didn't do it. Well, not somebody else say. There's nobody coming into court saying I did it. You have a telephone call purporting to be someone who says they did it. So it's hearsay. That's correct. Yeah. That's correct. Of an unidentified person. Well, except that he did identify himself on the call as Abu. That's true. Right. But that identification was never confirmed. Not independently. That's true. There was no way to confirm it, and they were unable to locate him according to the testimony. He was unavailable witness. The defense lawyer tried to make some calls, and the defendant testified that he couldn't find him. So you have to work with what you have, and I think that better be safe than sorry in letting the evidence in on something that to me would be pretty crucial. Counsel, you may want to go on to the loss calculation issue. Yeah, let me move on to the loss calculation. Yes. Basically, the loss amount which bumped up the offense level was determined to be $521,000 at the sentencing hearing. That operated to do a 14-level increase. But then, of course, comparing that to the exact same witness who testified at trial, it was $131,000. So a lot of the difference was on credit cards that were never retrieved. So if you took that amount out, which was I think about $274,000 or thereabouts, it would have reduced the offense level. But why can't those other incidents be taken into account? Well, I mean I think in theory that they can, but I don't think the – the original amounts were basically done on credit cards. And then what happened at the sentencing hearing is they went back and tried to reconstruct other account numbers to cards that they didn't find in the defendant's possession. And they – I don't think it was really verified that that information was accurate. Wasn't it connected to the defendant? Well, it was connected to a certain extent through – they tried to connect it through some addresses, through some addresses that the defendant was connected with, and through some documentation that the – was in the defendant's possession. But I think when you're comparing it to the $131,000 – But counsel, there's a perfectly logical explanation for that. The government's obligation to convict your client is to show beyond a reasonable doubt that there were losses. Once you get to the question of the sentencing, they only have to prove by a preponderance of the evidence. It's a lesser standard. And obviously the – I mean it could have been that the government thought, okay, we've got an additional amount. We're not confident we could persuade a jury that it's – we can prove it beyond a reasonable doubt. Well, we can certainly meet a lesser standard of preponderance, which is all they have to do. And here the district court said, yeah, not only satisfy preponderance, but I'm going to find that it's proven by clear and convincing evidence. So the district court said it did satisfy a higher standard. It just didn't – it just didn't quite reach proof beyond a reasonable doubt. Right. We just don't agree with that – the court's analysis because at least you had tangible credit cards. Since that's a finding of fact, is it your obligation to show that it's clear error? That may be – it might have to be clear error. Okay. So why is it clear error? Well, I think it's clear error because it was a lot of it – a lot of it was kind of hocus pocus with addresses and documentation that was retrieved from the bank by the agent who testified. And the bank didn't really do – the bank just gave her the data, and then she kind of tried to go back and reconnect it. So the bank really didn't do like a forensic accounting from the way I understood this was presented. And then they went back and said, well, we connect this address with the defendant because he had some connection to an address on Coenda or wherever it was, and there was another address. So – But there were also driver's licenses and the various names of the accounts with your client's photograph on those driver's licenses. So they had the driver's license and the address, the photograph of your client, all linked to these accounts. Well, that's just it. But I think without – I think the safer way, if they had – you know, if we're going to start saying all of a sudden it's half a million for restitution and another few extra points, they should have gotten the card some way other than just saying, well, we've got an address that's somehow connected to the defendant. I mean, that's our position, and that was kind of just piling on. I've got two minutes. Can I reserve that? Yes, you may. You may. You may do so, counsel. Okay. Thank you. Thank you very much. We'll hear from the government. Yes, Your Honors. Good morning. My name is Vicky Cho, and I represent the United States in this case. I'm going to begin with the lost calculation issue. To clarify, the district court paid special attention to the entries on the spreadsheet to which there was not a physical card attached to that account. And as the district court said in her findings, she dragged the agent through all of those entries and found by clear and convincing evidence that they were tied to the defendant. As Your Honor just noted, it wasn't just the physical cards that could have tied these entries to the defendant. There were also the false IDs, and in many cases, as the spreadsheet shows, and the spreadsheet is excerpts of record 385 to 391, there were additional cards sometimes. So, for example, take a John Price. There were numerous accounts tied to that person for which there were not cards, but there was an ID found in that person's name with defendant's picture on it, and defendant admitted at trial that of all the driver's licenses found with other people's names on them, that was indeed his picture. And then in addition to that, there were addresses for each of the accounts that were tied specifically to defendant. And task force officer shared testified both at sentencing and at trial about how each of these addresses were tied to the defendant. And you saw the defendant at multiple of these addresses with his own eyes, and in other cases, had other witnesses tell him that the defendant operated mailboxes or in one case had a fake mailbox company at that address. And so I submit that the district court did not err in finding by clear and convincing evidence that all of this loss was tied to the defendant. In terms of the other issues, the district court also did not abuse its discretion in refusing to substitute defendant's third attorney. And I think what's significant here is even now when counsel is arguing about the breakdown in communications, all the breakdown was based on things that defendant said to his counsel. There was no evidence that counsel said anything demonstrating animus towards the defendant. And the significance of defendant creating these issues is that it provides a basis for the district court's factual finding that the defendant is the one who is manufacturing issues and creating delay. And the district court was entitled in this case to find that if she replaced defendant's counsel, this would just happen again, and this case would never go to trial. And in this case, as a matter of timing, this was two weeks before trial. It would have occasioned a continuance, and the district court acted appropriately in denying defendant's request. On the question of hearsay, on the question of the admission of the- Mr. Abu. Yes, of Mr. Abu. I just wanted to point out very quickly that in this circuit's case, Poland, the reason why this type of evidence should be viewed more critically by the district court and by this court is because there has always been a concern, particularly in criminal cases, that this type of evidence would be fabricated. And you can see that in the committee notes prior to 1975, which Poland discusses why statements against interest in penal situations should be examined more carefully. And here, I also wanted to point out that the district court's assessment of this voicemail was made after the defendant had already testified and had actually named his cousin as Abu Obargeto and had also indicated that he was living with two other individuals, which in cross-examination he admitted were names that he himself had used, and so the jury reasonably could have assumed and likely did assume that all of these things were fabrications, including the defendant's cousin, whether or not he existed at all. Anything further? Not unless Your Honor has any questions about other issues. No questions. Thank you, counsel. Mr. Rome, you have some reserve time. I don't have any further information to add to the court process. Very well. The case just argued will be submitted for decision, and the court will hear the last case on their docket today, Burton v. Chappell.
judges: O'SCANNLAIN, RAWLINSON, BYBEE